JOURNAL ENTRY AND OPINION
{¶ 1} Defendant Alberta Payton appeals from her conviction for complicity in the commission of attempted felonious assault. For the reasons set forth below we reverse and remand for further proceedings consistent with this opinion.
 {¶ 2} On June 5, 2003, defendant was indicted for six counts of complicity in the commission of attempted felonious assault, in connection with allegations that she had hired a hit man to harm various family members and others. Defendant pled not guilty and was referred to the Court Psychiatric Clinic for competency and sanity reports. In the July 29, 2003, Competency Report, Dr. Otto Kausch informed the court that defendant was not capable of assisting in her defense because she was suffering from paranoid schizophrenia. By September 2003, Dr. Jonathan Sirkin informed the court that defendant was suffering from paranoid schizophrenia, was preoccupied with paranoid delusion, was noncompliant in taking her medication, but her symptoms improved when she took prescribed medication. In October 2003, the court was notified that defendant was restored to competency.
 {¶ 3} In a competency evaluation dated December 11, 2003, Dr. Michael Arnoff of the Court Psychiatric Clinic advised the court that defendant had a history of traits and behavior characteristic of a diagnosis of paranoid personality disorder, and that it was possible that defendant's problems with the victims identified in the indictment were the result of her delusional beliefs. He also opined that defendant could understand the court proceedings and assist in her defense, however.
 {¶ 4} In a sanity report from the same week, Dr. Arnoff indicated that "the core issue related to defendant's mental state at the time of the acts involves the determination of whether, due to a delusional process, Ms. Payton believed that her life was endangered by the targeted victims and hired an individual to harm them for purposes of self-protection, secondary to this potentially delusional misperception." Dr. Arnoff noted that defendant suffers from a paranoid personality disorder, but it was "unclear as to whether these rise to a psychotic level." He concluded, however, that in connection with the alleged offenses, but nonetheless knew the wrongfulness of her actions.
 {¶ 5} In a mitigation of penalty report, Dr. Arnoff stated:
 {¶ 6} "Given that she is diagnosed with a psychotic-spectrum mental illness, Delusional Disorder, and is being treated with antipsychotic medication, if granted probation by the Court, Ms. Payton would be appropriate for supervision through the Mentally Disordered Offenders (MDO) Program."
 {¶ 7} Finally, in January 2004, Dr. John Fabian opined that defendant suffers from a delusional disorder, persecutory type, but knew the wrongfulness of her actions. He also advised the court that the court's Mentally Disordered Offenders Program may be appropriate for her.
 {¶ 8} On February 12, 2004, defendant and the state reached a plea agreement whereby Count One was amended to add the names of the intended victims originally described in Counts Five and Six. Counts Five and Six were dismissed, and defendant pled guilty to the remaining charges.
 {¶ 9} At the subsequent sentencing hearing, the trial court reviewed defendant's presentence investigative report, and a Court Psychiatric Clinic report, and heard of three of the victims identified in the indictment.
 {¶ 10} Cynthia Payton, one of defendant's intended victims, informed the court that, in a prior incident, defendant assaulted her and repeatedly cut her daughter. Payton also informed the court that defendant repeatedly stalked them and she asked the court to punish her to the fullest extent of the law. Charles Payton also informed the court that defendant assaulted him in an earlier incident, and due to her mental illness, believes that she is being victimized. He asked the court to send her to a mental health facility where she could obtain treatment. Defendant's mother also addressed the court and asked that defendant be required to take anger management counseling.
 {¶ 11} The trial court noted that defendant has an undergraduate degree, and had been enrolled in a master's degree program at Cleveland State University. The court observed that defendant has paranoid and delusional disorders, but her physicians found her to be noncompliant in taking her prescribed medications. The court stated:
 {¶ 12} "You sought someone to main, kill and beat them. This is clearly a problem to the community at large * * * in my opinion the rest of us need [you to be incarcerated]. You need to be incarcerated, and unfortunately there's no place for me to send you to incarcerate you in a mental health hospital. * * *
 {¶ 13} "* * * I honestly do not believe that you are a good candidate for community control. I firmly believe that you have a high risk of recidivism based on your mental health issues, your past practice of not taking your medication, your past rage issues, and the facts of this case.
 {¶ 14} "This court also notes that the harm here was very great to these victims. They have suffered great psychological harm." (Tr. 40-41).
 {¶ 15} The court determined that imprisonment was consistent with the purposes of R.C. 2929.11 and sentenced defendant to consecutive three year terms of incarceration, and post-release control. The court noted that defendant had engaged in considerable prior calculation in planning offenses against a number of victims and it found that a community control sanction would not adequately protect the public. The trial court further determined defendant had a high risk of recidivism based upon her mental health issues and failure to continue to take her medication. Because of the number of victims, the prior calculation involved in planning the offenses, defendant's continued denial of her mental health issues, her refusal to take her medication, and the risk posed to the community, concurrent sentences were necessary and not disproportionate to the seriousness of the offenses, and sentences greater than the minimum term were justified.
 {¶ 16} Defendant now appeals and assigns eight errors for our review. Because we find the eighth assignment of error to be dispositive, we address it first.
 {¶ 17} "The court erred in failing to be aware of and failing to consider an alternative residential facility or halfway house in which the defendant could have received psychiatric treatment."
 {¶ 18} Defendant asserts that the trial court erred in failing to consider the residential sanctions set forth in R.C. 2929.16, non-residential sanctions set forth in R.C. 2929.17, and the Mentally Disordered Offenders Program. The state maintains that the ultimately determined that incarceration was required due to the risk presented to the community.
 {¶ 19} The record provides:
 {¶ 20} "Mr. Luskin believes that you don't need prison and maybe in his opinion you don't need it. You need to be incarcerated, and unfortunately there's no place for me to send you to incarcerate you in a mental health hospital.
 {¶ 21} "My options are two[:] community control supervision by the court, or incarceration and I honestly do not believe that you are a good candidate for community control." (Tr. 40).
 {¶ 22} We note, however that R.C. 2929.16 sets forth other residential sanctions and provides in relevant part as follows:
 {¶ 23} "(A) Except as provided in this division, the court imposing a sentence for a felony upon an offender who is not required to serve a mandatory prison term may impose any community residential sanction or combination of community residential sanctions under this section.
 {¶ 24} "(4) A term in a halfway house;
 {¶ 25} "(5) A term in an alternative residential facility.
 {¶ 26} "(B) The court that assigns any offender convicted of a felony to a residential sanction under this section may authorize the offender to be released so that the offender may seek or maintain employment, receive education or training, or receive treatment. A release pursuant to this division shall be only for the duration of time that is needed to fulfill the purpose of the release and for travel that reasonably is necessary to fulfill the purposes of the release. * * * *"
 {¶ 27} From the foregoing, it is unclear to us whether the trial court considered other options for dealing with this defendant whose offenses appear to be the result of her mental illness, and her failure to take her prescribed medication.
 {¶ 28} This matter is reversed and remanded for re-sentencing. Defendant's remaining assignments of error[1] are moot.
 APPENDIX {¶ 29} Defendant's first assignment of error states:
 {¶ 30} "The court's independent findings of fact and resulting increase in sentence violated Ms. Payton's Sixth Amendment right to have any disputed fact that would increase her penalty submitted to a jury."
 {¶ 31} Defendant's second assignment of error states:
 {¶ 32} "The trial court erred in its findings relating to the seriousness of the offense and the risk of recidivism, and therefore in its decision to imprison the defendant."
 {¶ 33} Defendant's third assignment of error states:
 {¶ 34} "The trial court erred by failing to acknowledge the presumption in favor of imposing the minimum sentence on the defendant, who had not served a prior prison term."
 {¶ 35} Defendant's fourth assignment of error states:
 {¶ 36} "The trial court erred by failing to make findings giving its reasons for imposing a sentence in excess of the maximum allowed for the offense of the highest degree."
 {¶ 37} Defendant's fifth assignment of error states:
 {¶ 38} "The trial court erred by ordering the defendant to serve consecutive sentences without making the required findings or stating on the record the reasons for the required findings."
 {¶ 39} Defendant's sixth assignment of error states:
 {¶ 40} "The trial court erred in failing to impose a sentence that was consistent with sentences imposed for similar offenses."
 {¶ 41} Defendant's seventh assignments of error states:
 {¶ 42} "The court erred by sentencing the defendant to twelve years for the commission of a single offense in violation of the Eighth Amendment prohibition against disproportionately excessive sentences."
 {¶ 43} This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.
It is, therefore, considered that said appellants recover of said appellees their costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, J., Concurs. Michael J. Corrigan, J., Dissents. (See attacheddissenting opinion)
[1] See Appendix.
DISSENTING OPINION