No. 3–09–0355

Opinion filed April 29, 2011

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2011

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of the 10th Judicial Circuit, |
| Plaintiff-Appellee, | ) | Peoria County, Illinois. |
| | ) | |
| v. | ) | Nos. 08-DT-173 & 08-TR-14549 |
| | ) | |
| GEORGE WILLIAMS, | ) | Honorable Albert L. Purham, Jr., and |
| | ) | Honorable Rebecca Steenrod, |
| Defendant-Appellant. | ) | Judges, Presiding |

JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion.
Justice Lytton concurred in the judgment and opinion.
Justice McDade specially concurred, with opinion.

**OPINION**

A jury convicted the defendant of driving under the influence of alcohol (DUI) and failure

to yield. The trial court sentenced him to 18 months of conditional discharge with community

service and alcohol treatment conditions and imposed over $1,300 in fines and costs. On appeal,

the defendant argues that he is entitled to a new trial because the trial court did not strictly comply

with the requirements of Illinois Supreme Court Rule 431(b) (eff. May 1, 2007) during *voir dire*.

Alternatively, the defendant argues that he is entitled to a $5 credit against the DUI fine for the

one day that he spent in custody on that charge, as required by section 110--14(a) of the Code of

Criminal Procedure of 1963 (the Code) (725 ILCS 5/110-14(a) (West 2008)). We affirm the defendant's conviction and modify the lower court's judgment to reflect a credit of $5 against the DUI fine.

FACTS

Jury selection in the defendant's trial began on March 10, 2009. At the beginning of the *voir dire*, the trial court addressed all of the members of the venire collectively and stated, in relevant part:

"You must follow the laws as I give it [*sic*] to you. You may not use your own ideas about what you think the law should be in deciding this case. ***

Under the law, a defendant is presumed to be innocent of the charges against him and this presumption remains with him throughout every stage of the trial and during your deliberation on a verdict. It is not overcome unless from all the evidence in this case you are convinced beyond a reasonable doubt that the defendant is guilty. The State has the burden of proving the guilt of the defendant beyond a reasonable doubt and this burden remains on the State throughout the case. ***

The defendant is not required to *** prove his innocence nor is he required to present any evidence on his own behalf. He may rely on the presumption of innocence. ***

2

*** [I]t's essential during the course of the trial that you not arrive at any decision or conclusion of any kind until you've heard all the evidence, the argument of the lawyers, and my instructions on the law. I'm going to repeat that more than once because you might be back in the jury room at a break or something. I'm going to tell you, don't make your mind up about anything. Now is not the time to do that. ***

*** [W]hen deciding this case, you must not allow sympathy or prejudice to influence you. Our system of law is based on the principle that a jury will decide the case on the law and evidence only. If you're selected as jurors, that's the oath that you'll take and I'm sure you'll be faithful to it if you are selected."

The trial court then seated the potential jurors in groups of six and questioned them both as a group and individually. Five of the six persons seated in the initial group were eventually chosen to serve as jurors. While addressing this group, the trial court stated that "you must follow the law as I give it to you even if you disagree with it." The court then asked each potential juror a series of questions, including whether he or she would "follow the law even if you disagree with it," "hold the State to the burden of proving all elements of the offense beyond a reasonable doubt," and "presume the defendant is innocent as he sits here now and *** throughout the course of the trial." Each individual chosen to serve as a juror answered "yes" to each of these questions. The defense raised no objections during *voir dire*.

3

After the jury was empaneled, the State presented its evidence. The State called three witnesses. Cindy Henry testified that, on the evening of April 21, 2008, she was driving her pickup truck eastbound on Starr Street in Peoria, approaching the intersection with Folkers Street. She saw another vehicle traveling toward her going westbound on Starr. Just as she reached the intersection of Starr and Folkers, the other vehicle made a left turn in front of her (turning from Starr onto Folkers). Henry put her car in neutral and hit the brakes, but the vehicles collided; the passenger's side of Henry's car hit the passenger's side of the other vehicle. The vehicles pulled over, and one of the residents of that area called the police.

Peoria police officer Winfred Fallert was dispatched to the scene. Fallert testified that he had been trained and educated as an accident investigator and accident reconstructionist and that his primary responsibility is investigating auto accidents. Fallert also testified that he had received training in DUI detection and had personally arrested over 200 DUIs and assisted in "probably over a hundred" other DUI arrests. At the accident scene, Fallert spoke with the defendant, who identified himself as the driver of the car that had collided with Henry's pickup truck. According to Fallert, the defendant smelled of alcohol, his speech was slurred, and he did not have a steady balance. Fallert testified that the defendant admitted that he had a few beers or drinks that evening, although he did not include this information in his police report. In addition, Fallert thought that the defendant was confused as to which way he had been going at the time of the accident.[1] In Fallert's opinion, the defendant was under the influence of alcohol. Moreover, after

_____

[1]According to Fallert, the defendant told him that he was driving southbound on Folkers when Henry's truck ran into him. Fallert told the defendant that if that were true, Henry's truck would have had the right of way because there is a stop sign on Folkers at the intersection with

4

examining the physical evidence (including the skid marks, accident debris, and damage to both vehicles), Fallert concluded that the defendant had been traveling westbound on Starr and had turned left in front of Henry's truck when the accident occurred.

Peoria police officer Ron Hartzell also testified for the State. Hartzell came to the accident scene to conduct a DUI investigation at Fallert's request, and he spoke with the defendant at the scene. Hartzell testified that the defendant smelled of alcohol from three feet away and had bloodshot eyes and slurred speech. Hartzell had the defendant perform two field sobriety tests, which the defendant failed. The defendant stated that he could not perform the tests (which required standing on one leg for 30 seconds and walking several heel-to-toe steps in a straight line) because he had a low leg or ankle injury. Believing the defendant to be intoxicated, Hartzell arrested him and put him in a squad car. After arresting the defendant, Hartzell offered him a Breathalyzer test, which he refused. A video recording of the field sobriety tests was admitted into evidence and played for the jury.

The defense called defendant's girlfriend, Jeanette Berry, as its only witness. Berry testified that, on the day of the accident, the defendant had come to a barbeque at her sister's house after he got off from work in the afternoon. Although Berry claimed that the defendant was not intoxicated when the two left the barbeque together in defendant's car later that evening, she admitted that defendant had 1½ beers at the barbeque. Berry was in the passenger's seat when the defendant drove westbound on Starr, toward Folkers. She testified that, as they started

Starr. According to Fallert, the defendant denied that there was a stop sign at the intersection and was "adamant" that he had been traveling southbound on Folkers at the time of the accident. Fallert did not include this information in his police report.

5

to make a left turn on Folkers, Ms. Henry's pickup truck seemed to speed up and hit them on the passenger's side. Berry also testified that the defendant has complained to her about having a fractured fibula and, ever since she has known him, he has received military disability benefits because of the condition of his feet. As long as she has known him, the defendant has walked with his feet out to the side while leaning over. Berry took pictures of the defendant's feet the day after the accident, which were admitted into evidence. The defendant did not testify during the trial, and the defense called no other witnesses.

The jury convicted the defendant of both charges. The court imposed the sentence recommended by the parties. For driving under the influence, the defendant was sentenced to an 18-month term of conditional discharge with specific community service and alcohol treatment conditions. The court also imposed a $1,000 fine plus other fines and costs. For the traffic offense of failing to yield, the court ordered the defendant to pay a $300 fine. The defendant timely appealed.

## ANALYSIS

### A. Rule 431(b) Compliance

The defendant maintains that the trial court committed reversible error by failing to conduct an adequate *voir dire* under Supreme Court Rule 431(b). He concedes that he did not raise this issue below, either at trial or in a posttrial motion. Nevertheless, he urges us to disregard his forfeiture of this issue and hold that the trial court's failure to comply strictly with the requirements of Rule 431(b) requires automatic reversal of his conviction. In the alternative, the defendant argues that he is entitled to a new trial under the plain error doctrine

6

notwithstanding his forfeiture of the issue because the trial court's violation of Rule 431(b) deprived him of a "substantial right." We disagree.

Because the *voir dire* in this case occurred in March 2009, the current, amended version of Rule 431(b) governs this case. That rule provides:

> "The court shall ask each potential juror, individually or in a group, whether that juror understands and accepts the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that the defendant's failure to testify cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's failure to testify when the defendant objects.
>
> The court's method of inquiry shall provide each juror an opportunity to respond to specific questions concerning the principles set out in this section." Ill. S. Ct. R. 431(b) (eff. May 1, 2007).

In the instant case, the court admonished the jury venire regarding the first three principles listed in the rule but neglected to mention during *voir dire* that the defendant's failure to testify cannot be held against him. Moreover, although the trial court asked each potential juror individually whether he or she would "presume the defendant is innocent *** throughout the

7

course of the trial" and "hold the State to the burden of proving all elements of the offense beyond a reasonable doubt," she never explicitly asked the jurors whether they understood and accepted that the defendant was not required to offer any evidence on his own behalf or that his failure to testify could not be held against him. Accordingly, the trial court did not strictly comply with the terms of Rule 431(b).

The defendant argues that this fact, standing alone, mandates an automatic reversal of his conviction. He acknowledges that we have rejected a bright-line rule of automatic reversal for violations of Rule 431(b) when the defendant fails to raise the issue below and have instead applied a plain error analysis. See, *e.g.*, *People v. Amerman*, 396 Ill. App. 3d 586, 592-96 (2009); *People v. Alexander*, 396 Ill. App. 3d 563, 574-77 (2009); *People v. Russell*, 395 Ill. App. 3d 926, 939-40 (2009). The defendant nevertheless argues for automatic reversal "in order to preserve the issue" should the Illinois Supreme Court adopt such a rule.[2]

Our Illinois Supreme Court recently rejected the argument that violations of Rule 431(b) are automatically reversible and confirmed that forfeited Rule 431(b) claims like those asserted in this case should be analyzed under the rubric of plain error. *People v. Thompson*, 238 Ill. 2d 598 (2010); see also *People v. Glasper*, 234 Ill. 2d 173, 193-203 (2009) (ruling that a violation of a prior version of Rule 431(b) did not require automatic reversal). In *Thompson*, the trial court

---

[2]The defendant erroneously claims that, in *People v. Wilmington*, 394 Ill. App. 3d 567, 572-76 (2009), and *People v. Graham*, 393 Ill. App. 3d 268, 275-76 (2009), the First District of the Appellate Court applied a rule of automatic reversal and "held that a violation of Rule 431(b) does not lend itself to *** plain error analysis." To the contrary, in both cases, the court applied a plain error analysis to forfeited claims that the trial court violated the rule.

8

admonished members of the venire regarding only three of the four Rule 431(b) principles during *voir dire*, asked the individual jurors whether they understood only two of the four principles, and asked them whether they accepted only one of the principles. Nevertheless, the court refused to apply a rule of automatic reversal. The court ruled that "automatic reversal is required only when an error is deemed 'structural.' " *Thompson*, 238 Ill. 2d at 608 (quoting *Glasper*, 234 Ill. 2d at 197). An error is typically designated as "structural" only if it "erode[s] the integrity of the judicial process and undermine[s] the fairness of the defendant's trial" and therefore "necessarily renders a criminal trial fundamentally unfair or an unreliable means of determining guilt or innocence." (Internal quotation marks omitted.) *Thompson*, 238 Ill. 2d at 608-09 (citing *Glasper*, 234 Ill. 2d at 196-98).[3] The court held that a trial court's failure to question jurors regarding the Rule 431(b) principles during *voir dire* did not rise to the level of structural error—even though full compliance with the rule's requirements is both "important" and mandatory—because "violation of the rule does not necessarily render a trial fundamentally unfair or unreliable in determining guilt or innocence." *Thompson*, 238 Ill. 2d at 611. The questioning mandated by Rule 431(b) "is simply one way of helping to ensure a fair and impartial jury," and failure to comply with the rule "does not necessarily result in a biased jury." *Thompson*, 238 Ill. 2d at 610-11. The court found that there was "no evidence that [the] defendant was tried by a

---

[3]The court noted that the United States Supreme Court has recognized an error as structural "only in a very limited class of cases," including "a complete denial of counsel, trial before a biased judge, racial discrimination in the selection of a grand jury, denial of self-representation at trial, denial of a public trial, and a defective reasonable doubt instruction." *Thompson*, 238 Ill. 2d at 609 (citing *Washington v. Recuenco*, 548 U.S. 212, 218 n.2 (2006)).

9

biased jury" in the case before it, particularly considering that "the trial court did address some of the Rule 431(b) requirements in its *voir dire* and *** the jury was admonished and instructed on Rule 431(b) principles" before it began its deliberations. *Thompson*, 238 Ill. 2d at 611. Accordingly, the court concluded that the trial court's violation of amended Rule 431(b) "d[id] not require automatic reversal of [the] defendant's conviction." *Thompson*, 238 Ill. 2d at 611.

*Thompson* forecloses the defendant's argument that the trial court's noncompliance with Rule 431(b) in this case requires automatic reversal. Like the trial court in *Thompson*, the trial court here admonished the potential jurors collectively regarding three of the four Rule 431(b) principles and questioned each juror regarding some of the Rule 431(b) principles but failed to ask each juror whether he or she understood and accepted all four principles. Also, as in *Thompson*, all of the Rule 431(b) principles were accurately conveyed to the jury through the jury instructions, and there is nothing to suggest that the jury in this case was biased. Accordingly, *Thompson*'s holding controls. The trial court's failure to strictly comply with the dictates of the rule during *voir dire* does not fall within the very limited class of structural errors that would require automatic reversal.

In the alternative, the defendant argues that his conviction is reversible under the plain error doctrine. As noted, the defendant concedes that he raised no objection to the trial court's violation of Rule 431(b), either during the *voir dire* or in a posttrial motion. Thus, the issue has been forfeited. *People v. Allen*, 222 Ill. 2d 340, 350 (2006); *Amerman*, 396 Ill. App. 3d at 592. However, the plain error rule bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved claims of error in two specific circumstances. Specifically, courts will apply the plain error doctrine when:

10

> " '(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence.' " *Thompson*, 238 Ill. 2d at 613 (quoting *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007)).

As noted above, the trial court's failure to ask each potential juror whether he or she understood and accepted each of the Rule 431(b) principles was error. The defendant does not argue that the evidence was closely balanced. Instead, he argues only that the trial court's failure to comply fully with the requirements of Rule 431(b) deprived him of a substantial right. Thus, we limit our plain error analysis to the second prong of the plain error test. See *Alexander*, 396 Ill. App. 3d at 575; see also *Thompson*, 238 Ill. 2d at 613.

Our supreme court has equated the second prong of plain error review with structural error, asserting that reversal is required under this prong only for fundamental, systemic errors that " 'erode the integrity of the judicial process and undermine the fairness of the defendant's trial.' " (Internal quotation marks omitted.) *Thompson*, 238 Ill. 2d at 608-09 (quoting *Glasper*, 234 Ill.2d at 197-98). A finding that the defendant was tried by a biased jury "would certainly satisfy the second prong of plain-error review because it would affect his right to a fair trial and challenge the integrity of the judicial process." *Thompson*, 238 Ill. 2d at 614. However, the defendant "has the burden of persuasion on this issue," and a court "cannot presume the jury was

11

biased simply because the trial court erred in conducting the Rule 431(b) questioning." *Thompson*, 238 Ill. 2d at 614. Thus, where a defendant presents no evidence of juror bias resulting from a violation of Rule 431(b), his claim of plain error must fail. *Thompson*, 238 Ill. 2d at 614-15.

Applying these principles in *Thompson*, the supreme court rejected a claim of plain error very similar to the claim presented in this case. *Thompson*, 238 Ill. 2d at 613-15. In *Thompson*, the prospective jurors "received some, but not all, of the required Rule 431(b) questioning," and "the venire was also admonished and instructed on Rule 431(b) principles." *Thompson*, 238 Ill. 2d at 615. Moreover, although the defendant complained that the trial court failed to fully comply with Rule 431(b), he "[did] not present[] any evidence that the jury was biased" as a result. *Thompson*, 238 Ill. 2d at 614. Accordingly, the court found that the defendant had "failed to meet his burden of showing the error affected the fairness of his trial and challenged the integrity of the judicial process," and held that "the second prong of plain-error review [did] not provide a basis for excusing defendant's procedural default." *Thompson*, 238 Ill. 2d at 615.[4]

-----

[4] The court rejected the argument that the 2007 amendment to Rule 431(b)—which imposed a duty on trial courts to perform the Rule 431(b) questioning in every criminal case tried by a jury—made the Rule 431(b) questioning "indispensable to a fair trial." *Thompson*, 238 Ill. 2d at 614-15; see also *Thompson*, 238 Ill. 2d at 610. The court reasoned that "the failure to conduct Rule 431(b) questioning does not necessarily result in a biased jury, regardless of whether that questioning is mandatory or permissive under our rule. Although the amendment to the rule serves to promote the selection of an impartial jury by making questioning mandatory, Rule 431(b) questioning is only one method of helping to ensure the selection of an impartial jury.

12

We applied similar reasoning and reached the same conclusion in *Amerman*, a case that is strikingly similar to the instant case. *Amerman*, 396 Ill. App. 3d at 592-96. In *Amerman*, as in this case, the trial court admonished the potential jurors regarding the first three Rule 431(b) principles but failed to mention during *voir dire* that the defendant's failure to testify cannot be used against him. *Amerman*, 396 Ill. App. 3d at 588. As in this case, the trial court never explicitly asked the jurors whether they understood and accepted that principle and did not ask each of the jurors whether they understood and accepted that the defendant was not required to present any evidence. *Amerman*, 396 Ill. App. 3d at 592-96. Moreover, as in this case, the jury instructions addressed all four of the Rule 431(b) principles, and that was the first time in the proceedings that the jurors were told that a defendant's failure to testify cannot be held against him. *Amerman*, 396 Ill. App. 3d at 588-89.

This court affirmed the defendant's conviction, with Justice McDade dissenting. Relying on the supreme court's decision in *Glasper*, we reasoned that the trial court's failure to strictly comply with Rule 431(b) did not result in a biased jury, particularly because the record showed that "the jury was instructed [on] the [Rule 431(b)] principles before its deliberations." *Amerman*, 396 Ill. App. 3d at 595 (citing *Glasper*, 234 Ill. 2d at 201). We noted that a contrary conclusion "would require us to presume that citizens sworn as jurors ignore the law and the jury instructions given to them," which is contrary to our precedent. (Internal quotation marks omitted.) *Amerman*, 396 Ill. App. 3d at 595. We also found it significant that our supreme court has expressly "moved away" from the portion of its holding in *People v. Zehr*, 103 Ill. 2d 472 (1984), which stated that the Rule 431(b) questions must be covered "in the course of interrogation on

_____

[Citation.] It is not the only means of achieving that objective." *Thompson*, 238 Ill. 2d at 614.

13

*voir dire*" and that "the failure to ask these questions amounts to 'prejudicial error.' " (Internal quotation marks omitted.) *Amerman,* 396 Ill. App. 3d at 595 (quoting *Glasper*, 234 Ill. 2d at 197).

*Thompson* and *Amerman* dictate the result in this case. As noted above, the trial court's violations of Rule 431(b) in this case closely parallel the errors discussed in those cases, and the jury instructions given in each case were substantially identical. Like the defendants in *Thompson* and *Amerman*, the defendant in this case offers nothing to suggest that the trial court's errors during *voir dire* resulted in juror bias. The defendant alludes in vague and conclusory fashion to unspecified "prejudice" and the deprivation of "substantial rights," but he simply *presumes* that such consequences flow automatically from the violation of Rule 431(b); he does not provide *any* evidence or argument purporting to show that jury bias or any other prejudice actually resulted from the trial court's violation of the rule in this case. As our supreme court has made clear, that is not enough. *Thompson*, 238 Ill. 2d at 614 (ruling that "[w]e cannot presume the jury was biased simply because the trial court erred in conducting the Rule 431(b) questioning," and holding that defendant failed to meet his burden under the plain error doctrine where he offered no evidence of juror bias); see also *Amerman*, 396 Ill. App. 3d at 592-96.

The case for affirmance is even stronger here than it was in *Amerman*, because the trial court in this case took additional steps during *voir dire* to ensure that the jurors would faithfully apply the law in an unbiased fashion. Specifically, the court admonished the entire venire that "[y]ou must follow the laws as I give it [*sic*] to you. You may not use your own ideas about what you think the law should be in deciding this case ***." While addressing this first group of six potential jurors in the jury box (when all members of the venire apparently still were present), the

14

court stated that "you must follow the law as I give it to you *even if you disagree with it.*" (Emphasis added.) The court then asked each potential juror a series of questions, including whether he or she would "follow the law even if you disagree with it." Each individual chosen to serve as a juror answered "yes" to each of these questions. The court also admonished the entire venire that "it's essential during the course of the trial that you not arrive at any decision or conclusion of any kind until you've heard all the evidence, the argument of the lawyers, *and my instructions on the law*" (emphasis added), that "when deciding this case, you must not allow sympathy or prejudice to influence you," and that "[o]ur system of law is based on the principle that a jury will decide the case on the law and evidence only." These admonitions and questions—in conjunction with the other admonishments, questions, and the jury instructions—ensured that the jury understood the Rule 431(b) principles and agreed to apply them in rendering its verdict. See *Russell*, 395 Ill. App. 3d at 941-42 (holding that lower court's failure to strictly comply with Rule 431(b) was not plain error where, *inter alia*, the court asked the jurors whether they would apply the law as given in the jury instructions, decide the case without sympathy and prejudice, and wait until the end of the trial to form an opinion). This fully satisfied the spirit, if not the letter, of Rule 431(b).

The defendant relies on *People v. Blanton*, 396 Ill. App. 3d 230 (4th Dist. 2009), to support his claim of plain error, but that case is inapposite. In *Blanton*, the jurors were never advised or instructed that a defendant's failure to testify could not be held against him. In this case, by contrast, the jury was instructed on that principle prior to its deliberations, and the trial court posed questions to each juror which helped to ensure that the jurors would apply the jury instructions as given. Moreover, *Blanton* was decided before *Thompson*, and its holding rests on

15

an erroneous premise that the supreme court squarely rejected in *Thompson*. Specifically, *Blanton* held that *Glasper*'s ruling that a violation of Rule 431(b) was not structural error that required automatic reversal applied only to the preamended version of the rule. *Blanton*, 396 Ill. App. 3d at 238-39. In *Thompson*, the court expressly rejected that argument and ruled that its analysis in *Glasper* also applied to the current, amended version of the rule. *Thompson*, 238 Ill. 2d at 614-15. Thus, the defendant's reliance on *Blanton* is unavailing.

The doctrine of plain error is not " 'a general saving clause preserving for review all errors affecting substantial rights whether or not they have been brought to the attention of the trial court.' " *People v. Herron*, 215 Ill. 2d 167, 177 (2005) (quoting *People v. Precup*, 73 Ill. 2d 7, 16 (1978)). Rather, it is a narrow exception to the rule of forfeiture that applies only in the specific circumstances discussed above. Because the defendant does not argue that the evidence in this case was closely balanced and has failed to show that the trial court's violation of Rule 431(b) amounted to a structural error, his claim of plain error fails.

### B. *Per diem* Credit

The defendant also argues that he is entitled to $5 credit for the single day that he spent in custody on the DUI charge. Section 110--14(a) of the Code provides that "[a]ny person incarcerated on a bailable offense who does not supply bail and against whom a fine is levied on conviction of such offense shall be allowed a credit of $5 for each day so incarcerated upon application of the defendant," provided that the amount of the credit does not exceed the amount of the fine. 725 ILCS 5/110-14(a) (West 2008). As the State concedes, a defendant's entitlement to this *per diem* credit is mandatory under the statute, and a defendant may be awarded the $5-per-day credit on appeal even when he fails to raise the issue before the trial court. See, *e.g.*,

16

*People v. Woodard*, 175 Ill. 2d 435, 457 (1997); *People v. Scott*, 277 Ill. App. 3d 565, 566 (1996). Here, the defendant was incarcerated for a portion of a single day, and he was later fined $1,000 for the DUI offense. Accordingly, as the State concedes, he is entitled to a $5 credit under the statute even though he never asked the trial court to award the credit and did not object when the court neglected to do so *sua sponte*.

CONCLUSION

For the foregoing reasons, we affirm the judgments of conviction imposed by the Peoria County circuit court and modify the judgments to reflect a credit of $5 against the DUI fine for the time that the defendant spent in presentence custody, as required by section 110--14(a) of the Code (725 ILCS 5/110-14(a) (West 2008)). As part of our judgment, we grant the State's request that the defendant be assessed $50 as costs for this appeal. See *People v. Williams*, 235 Ill. 2d 286 (2009).

Affirmed as modified.

JUSTICE McDADE, specially concurring

I concur in this decision because that result is required by the supreme court's recent decision in *People v. Thompson*, 238 Ill. 2d 598 (2010).

I write separately to emphasize to defense counsel that they rely on the language of rule 431(b) (Ill. S. Ct. R. 431(b) (eff. May 1, 2007)) to the peril of their clients.

In the 2007 amendment to rule 431(b), the supreme court eliminated language requiring that the defendant ask the court to instruct or question jurors on the four fundamental trial principles included in the rule. In that amendment, the court appeared to place the burden of fully instructing the jury about the *Zehr* principles wholly on the trial court judges. Now with its

17

decision in *Thompson* the supreme court, despite both the evolution of rule 431(b) and its plain language, effectively puts the burden once again on defendant, through his counsel, to *ask* the court to carry out its responsibility or to object if it does not do so fully.

If the defendant fails to do either of those things, he or she is obligated to prove prejudice attributable to that specific error on the part of the trial judge. *Thompson*, 238 Ill. 2d at 614. I find it virtually impossible to envision a likely situation in which, in the absence of appropriate questioning of the jurors by the trial court or an outright posttrial declaration of a violation by a juror, a defendant could possibly prove the requisite prejudice.

The supreme court continues to declare that its rules are not mere suggestions but are mandatory and, while they are not law, they do have the force of law. *In re Denzel W.*, 237 Ill. 2d 285 (2010). Doing the 431(b) *voir dire* as specified in the rule is not rocket science. Nonetheless, the court requires the defendant to meet a seemingly impossible standard of proof to redress the trial court's failure to follow the rule.

Following *Thompson*, defense attorneys and prosecutors who are committed to maintaining the level playing field required for a properly-functioning adversarial criminal justice system must be vigilant in ensuring that potential jurors are adequately -- by which I mean in a manner *actually* compliant with the procedures the supreme court has set out in rule 431(b) -- instructed on the fundamental principles articulated and protected in *People v. Zehr*, 103 Ill. 2d 472 (1984).