[Cite as *Payton v. Ohio Dept. of Ins.*, 2012-Ohio-4826.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
No.   98330

---

## ALBERTA PAYTON

PLAINTIFF-APPELLANT

vs.

## OHIO DEPARTMENT OF INSURANCE

DEFENDANT-APPELLEE

---

JUDGMENT:
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Common Pleas Court
Case No. CV-765879

BEFORE:   Boyle, P.J., Sweeney, J., and Rocco, J.
RELEASED AND JOURNALIZED:   October 18, 2012

**ATTORNEY FOR APPELLANT**

Loren Gordon
850 Euclid Avenue
Suite 1013
Cleveland, Ohio    44113


**ATTORNEYS FOR APPELLEE**

Michael DeWine
Attorney General of Ohio
Scott Myers
Assistant Attorney General
Health & Human Services Section
30 East Broad Street, 26th Floor
Columbus, Ohio    43215

MARY J. BOYLE, P.J.:

{¶1} Plaintiff-appellant, Alberta Payton, appeals a common pleas court judgment affirming an order of defendant-appellee, Ohio Department of Insurance ("Department"), denying her application to be licensed as an insurance agent in the state of Ohio. Finding no merit to her appeal, we affirm.

## Procedural History

{¶2} In March 2011, Payton applied for a license with the Department to sell insurance. In her application, she stated that she had been convicted of a felony offense. As required, she attached certified copies of her conviction to her application, showing that she had been convicted in 2004 of four counts of complicity in the commission of attempted felonious assault.

{¶3} In a "Notice of Opportunity for Hearing," the Department denied Payton's application, informing her that it had conducted an investigation and determined that she was "not suitable to be a licensed insurance agent." It notified Payton that it intended to "refuse to issue her any license and/or take any other action * * * authorized pursuant to R.C. 3905.14(D) including civil penalties and/or administrative costs." It further notified Payton that the grounds for such action were:

COUNT ONE

On or about April 1, 2004, in the Cuyahoga County Court of Common Pleas, Payton was convicted of four counts of Complicity in Commission of Attempt [sic] Felonious Assault, each count being a felony of the third degree. Pursuant to section 3905.14(B)(6) of the Revised Code, the Superintendent may refuse to issue a license to a person convicted of a felony.

{¶4} Payton requested a hearing. Subsequent to the hearing, the hearing officer issued his report and recommendation, finding (1) that Payton had "committed violations of the laws and regulations" of the state of Ohio, and (2) that she was "not suitable to be licensed as an insurance agent."

{¶5} In his findings of fact, the hearing officer found that Payton had been convicted in 2004 of four counts of complicity in the commission of attempted felonious assault. She was sentenced to three years in prison. She appealed her sentence to this court. *See State v. Payton*, 8th Dist. No. 84562, 2005-Ohio-3572. The Department submitted several exhibits into the record, including certified copies of Payton's conviction, as well as this court's decision of her appeal.

{¶6} In *Payton*, this court explained that Payton's charges arose "in connection with allegations that she had hired a hit man to harm various family members and others." *Id.* at ¶ 2. A summary of the case follows.

> [Payton] pled not guilty and was referred to the Court Psychiatric Clinic for competency and sanity reports. In the July 29, 2003, Competency Report, Dr. Otto Kausch informed the court that defendant was not capable of assisting in her defense because she was suffering from paranoid schizophrenia. By

September 2003, Dr. Jonathan Sirkin informed the court that defendant was suffering from paranoid schizophrenia, was preoccupied with paranoid delusion, was noncompliant in taking her medication, but her symptoms improved when she took prescribed medication. In October 2003, the court was notified that defendant was restored to competency.

In a competency evaluation dated December 11, 2003, Dr. Michael Arnoff of the Court Psychiatric Clinic advised the court that defendant had a history of traits and behavior characteristic of a diagnosis of paranoid personality disorder, and that it was possible that defendant's problems with the victims identified in the indictment were the result of her delusional beliefs. He also opined that defendant could understand the court proceedings and assist in her defense, however.

In a sanity report from the same week, Dr. Arnoff indicated that "the core issue related to defendant's mental state at the time of the acts involves the determination of whether, due to a delusional process, Ms. Payton believed that her life was endangered by the targeted victims and hired an individual to harm them for purposes of self-protection, secondary to this potentially delusional misperception." Dr. Arnoff noted that defendant suffers from a paranoid personality disorder, but it was "unclear as to whether these rise to a psychotic level." He concluded, however, that in connection with the alleged offenses, but nonetheless knew the wrongfulness of her actions.

In a mitigation of penalty report, Dr. Arnoff stated:

"Given that she is diagnosed with a psychotic-spectrum mental illness, Delusional Disorder, and is being treated with antipsychotic medication, if granted probation by the Court, Ms. Payton would be appropriate for supervision through the Mentally Disordered Offenders (MDO) Program."

Finally, in January 2004, Dr. John Fabian opined that defendant suffers from a delusional disorder, persecutory type, but knew the wrongfulness of her actions. He also advised the court that the court's Mentally Disordered Offenders Program may be appropriate for her.

*Id.* at ¶ 2-7.

{¶7} This court explained that after Payton was restored to competency, she entered her guilty plea. The trial court sentenced Payton to three years in prison, stating that it had two options: "community control supervision by the court, or incarceration." *Id.* at ¶ 21. This court reversed Payton's sentence, however, because we determined that the record was "unclear" as to "whether the trial court considered other options [such as residential sanctions set forth in R.C. 2929.16] for dealing with [a] defendant whose offenses appear to be the result of her mental illness, and her failure to take her prescribed medication." *Id.* at ¶ 27.

{¶8} Upon remand, the trial court sentenced Payton to three years of community control sanctions. The hearing officer found that Payton violated the terms of her community control four times, which extended the length of her supervision by ten months.

{¶9} The hearing officer noted that before the hearing, Payton had sent the Department 31 pages of correspondence in "longhand" regarding her "contentions as to why the Department should disregard her previous felony conviction in considering whether she should be granted an Ohio insurance license." The correspondence was entered into evidence.

{¶10} The hearing officer found that Payton testified at length concerning her criminal conviction. The hearing officer quoted several portions of the transcript where Payton claimed that she was innocent of the 2004 charges. When asked why she pleaded guilty, she blamed her brother, her mother, the system, the trial court judge, and her public

"pretender." She testified that she pleaded guilty under duress. She further denied that she had any mental health issues, claiming that she was only diagnosed with mental illness because her brother told her psychologist that she was mentally ill so that he would not go to prison. With regard to her appeal, Payton testified that "basically [she] was wrongfully accused so they worked up an appeal and I was released." When asked "so you were guilty of the offense; you didn't just go to jail, you served probation," Payton replied, "[n]o, I was not guilty and I was given probation."

{¶11} The hearing officer noted that Payton had a bachelor's degree in interior design from Mount St. Joseph College in Cincinnati and was working toward a master's degree in social work during the time leading up to her conviction.

{¶12} Payton introduced a copy of a petition for a civil protection order that she filed against her brother in 2001, where she alleged that her brother assaulted her by hitting her on the head and pushing her. An attached police report indicated that Payton and her brother got into another altercation that same year.

{¶13} The hearing officer concluded his findings of fact, stating "the evidence does not support that [Payton] is of good reputation and character, is honest and trustworthy, and is otherwise suitable to be licensed as an insurance agent in the State of Ohio."

{¶14} In his conclusions of law, the hearing officer concluded that in March 2004, Payton was convicted of four counts of complicity in the commission of attempted felonious

assault.  The hearing officer concluded that under R.C. 3905.14(B)(6), the superintendent "may refuse to issue a license to a person convicted of a felony."  The hearing officer further concluded that based on R.C. 3905.06(A)(1)(h), an applicant for an Ohio insurance license must "be of good character, [be] honest and trustworthy and otherwise suitable to be licensed."  The hearing officer concluded that the evidence did not support that Payton met the criteria under R.C. 3905.06(A)(1)(h).  The hearing officer recommended that Payton's application be denied.

{¶15} Payton appealed the hearing officer's report and recommendation to the superintendent of insurance.  The superintendent accepted the recommendation of the hearing officer and ordered that Payton's application  to become a licensed insurance agent be denied.  Payton appealed the superintendent's order to the common pleas court.

{¶16} The common pleas court found that the superintendent's order was supported by reliable, probative, and substantial evidence, and was in accordance with law.  It is from this judgment that Payton appeals, raising a sole assignment of error for our review, namely, that "[t]he trial court erred when it affirmed the order of the Ohio Department of Insurance[.]"

<u>Standard of Review</u>

{¶17} A common pleas court, in reviewing an order of an administrative agency under R.C. 119.12, must consider the entire record to determine whether reliable, probative,

and substantial evidence supports the agency's order and the order is in accordance with law. *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 110-111, 407 N.E.2d 1265 (1980). The common pleas court's "review of the administrative record is neither a trial de novo nor an appeal on questions of law only, but a hybrid review in which the court 'must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.'" *Lies v. Veterinary Med. Bd.*, 2 Ohio App.3d 204, 207, 441 N.E.2d 584 (1st Dist.1981), quoting *Andrews v. Bd. of Liquor Control*, 164 Ohio St. 275, 280, 131 N.E.2d 390 (1955). The common pleas court must give due deference to the administrative agency's resolution of evidentiary conflicts, but "the findings of the agency are by no means conclusive." *Conrad* at 111. The common pleas court conducts a de novo review of questions of law, exercising its independent judgment in determining whether the administrative order is "in accordance with law." *Ohio Historical Soc. v. State Emp. Relations Bd.*, 66 Ohio St.3d 466, 471, 613 N.E.2d 591 (1993).

{¶18} An appellate court's review of an administrative decision is more limited than that of a common pleas court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621, 614 N.E.2d 748 (1993). The appellate court is to determine only whether the common pleas court abused its discretion. *Id.* Absent an abuse of discretion, a court of appeals may not substitute its judgment for that of an administrative agency or the common pleas court. *Pons* at 621. It is axiomatic, however, that an appellate court reviews purely legal questions de

novo. *Big Bob's, Inc. v. Ohio Liquor Control Comm.*, 151 Ohio App.3d 498, 2003-Ohio-418, 784 N.E.2d 753, ¶ 15 (10th Dist.).

{¶19} Payton asserts that this appeal presents only questions of law. We disagree. Accordingly, we review the trial court's decision for abuse of discretion.

Due Process

{¶20} The only issue Payton raises in this appeal is whether the trial court abused its discretion in affirming the Department's denial of her insurance license "even though the Department's notice of a right to a hearing did not fully inform [her] of all the charges against her, thereby depriving her of fair opportunity to defend herself at the hearing." She claims that the Department "based its decision on charges that it did not identify in the statutory notice."

{¶21} R.C. 119.07 provides that when an administrative agency takes action against a party, it must give notice to the party. The rule prescribes how the notice must be given, and states that it "shall include the charges or other reasons for the proposed action, the law or rule directly involved, and a statement informing the party that the party is entitled to a hearing if the party requests it within thirty days of the time of mailing the notice." *Id.*

{¶22} Payton cites to *Pruneau v. Ohio Dept. of Commerce*, 191 Ohio App.3d 588, 2010-Ohio-6043, 947 N.E.2d 900 (10th Dist.), in support of her argument. In *Pruneau* at ¶ 31, the court explained:

"The fundamental requirement of procedural due process is notice and hearing, that is, an opportunity to be heard." *Korn v. Ohio State Med. Bd.*, 61 Ohio App.3d 677, 684, 573 N.E.2d 1100 (1988), citing *Luff v. State*, 117 Ohio St. 102, 157 N.E. 388 (1927). "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Althof v. Ohio State Bd. of Psychology*, 10th Dist. No. 05AP-1169, 2007-Ohio-1010, ¶ 19, quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L. Ed. 865 (1950) (internal quotation marks omitted). "'The right to a hearing embraces not only the right to present evidence, but also a reasonable opportunity to know the claims of the opposing party and to meet them.'" *Id.*, quoting *Gonzales v. United States*, 348 U.S. 407, 414, fn. 5, 75 S.Ct. 409, 413, 99 L. Ed. 467 (1955), quoting *Morgan v. United States*, 304 U.S. 1, 18, 58 S.Ct. 773, 776, 82 L. Ed. 1129 (1938).

{¶23} In *Pruneau*, the Ohio Department of Commerce ("Commerce Department") sent notice to American Glass Services, Inc. and Dorsey Construction Company ("Dorsey") informing them they were in violation of the Ohio's Prevailing Wage Law, specifically R.C. 4115.13(H)(1). After a hearing, the hearing examiner issued a report finding that the Commerce Department did not prove that Dorsey violated R.C. 4115.13(H)(1). But the hearing examiner did find that the Department presented sufficient evidence to establish that Dorsey violated R.C. 4115.13(H)(4).

{¶24} Dorsey appealed the decision, arguing that its due process rights were violated because it was not given sufficient notice that it had violated R.C. 4115.13(H)(4). The trial court affirmed the Commerce Department's final orders against Dorsey because Dorsey's

"notice letter included a general reference to R.C. Chapter 4115," and thus, was not prejudicial. *Id.* at ¶ 32.

{¶25} The Tenth District reversed the decision of the trial court. *Id.* at ¶ 43. It pointed out that the Department's notice letter did not allege a general violation of R.C. Chapter 4115; it alleged a very specific violation of R.C. 4115.13(H)(1) and failed to reference R.C. 4115.13(H)(4). *Id.* at ¶ 36. The Tenth District also noted that at the beginning of the hearing, the parties stipulated that "the only charges" they were addressing "was what [the Commerce Department] listed in [the notice] letter." *Id.* at ¶ 37. The court reasoned that

> the parties' stipulation confirms Dorsey's expectation that it needed to defend against only the specific allegation of an intentional violation under R.C. 4115.13(H)(1). Given the specificity of the notice letter and the stipulation before the hearing examiner, Dorsey did not receive adequate notice that it faced a potential violation of R.C. 4115.13(H)(4).

*Id.*

{¶26} The Tenth District concluded that Dorsey was prejudiced by the Commerce Department's failure to provide adequate notice. *Id.* at ¶ 41. The court explained that it could not "ignore that had Dorsey known other potential charges were at issue, it may have presented additional or different evidence, or even used a different defense strategy, in light

of the additional charge." *Id.* at ¶ 40. Further, "[b]ecause of the undisputed assurance given to Dorsey that only a violation of R.C. 4115.13(H)(1) was at issue," the court was "compelled to conclude [that] the notice to Dorsey was insufficient to alert Dorsey that charges under R.C. 4115.13(H)(4) were at issue." *Id.*

{¶27} We find *Pruneau* to be distinguishable on its facts. In *Pruneau*, 191 Ohio App.3d 588, 2010-Ohio-6043, 947 N.E.2d 900, the hearing examiner found that the Commerce Department did not prove that Dorsey had violated R.C. 4115.13(H)(1) — the only subsection listed in the notice. Instead, the hearing examiner found that based upon the evidence, Dorsey actually violated a separate subsection of Ohio's Prevailing Wage Law, namely, R.C. 4115.13(H)(4).

{¶28} In the present case, however, the hearing examiner found that Payton was convicted of a felony. In Payton's notice from the Department, this was the only allegation. Thus, the Department proved its allegation at the hearing. Had the Department not proven this fact, and the hearing examiner still recommended denying Payton's license for a separate reason, we would reach a different conclusion.

{¶29} Payton argues that under R.C. 3905.14(D)(8) and 3905.14(E), the Department could have ordered corrective action "in lieu of" denying her a license, and could have considered various mitigating factors rather than deny her a license. We agree that it *could*

have.    But it is fully within the Department's discretion not to do so.    *See* R.C. 3905.14(D)(8) and 3905.14(E).

{¶30} Payton further argues that she was materially prejudiced because if she had known that she was facing allegations that her reputation and character were at issue, she could have presented more evidence that may have led to a different outcome.    Although that may be true in some cases, we disagree under the facts of this case.    The hearing officer found that Payton was not truthful because she would not acknowledge she was guilty of the crimes that she pled to in 2004, nor would she acknowledge that she ever had any mental health issues.    She adamantly testified that she was the victim — over and over — and claimed that she was innocent.    She sent a 31-page correspondence to the Commerce Department declaring that same thing.    It is highly doubtful that had Payton been on notice that her character might be at issue, she would have acknowledged her prior guilt and mental illness.

{¶31} Accordingly, we conclude that the trial court did not abuse its discretion when it affirmed the Commerce Department's order denying Payton a license to sell insurance in the state of Ohio.    Payton's sole assignment of error is overruled.

{¶32} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, PRESIDING JUDGE

JAMES J. SWEENEY, J., and
KENNETH A. ROCCO, J., CONCUR